Good morning, everyone. We have four argued cases on the calendar today, and we have one submitted case. The submitted case is United States v. Wright. Let me begin this morning by thanking Judge Ramos, who is sitting with us from the Southern District. We're very thankful. We have a busy calendar up here, and we're very thankful when our district court judges help us get our work done. So thank you very much. It's good to have you here. I've been told that counsel is present in all the cases to be argued this morning, so I'm going to dispense with reading the calendar. I think we're ready to hear our first case, American Family Life Assurance v. Baker. Good morning, Your Honors. May I please the Court? My name is Dmitry Joffe, and I represent appellants in this case. The arbitration agreement that AFLAC seeks to enforce against its sales associates is unconscionable because it precludes the associates from pursuing their statutory rights in any forum, and it is pervaded by one-sided terms all unreasonably favoring AFLAC, and which terms the associates have no meaningful choice but to accept. You say that it precludes you or your clients from pursuing claims in any forum at all. That would be paragraph 107.1. Is that what you're relying on? Yes, Your Honor. It's a combination of paragraphs 10.1 working in tandem with paragraph 10.71, which on its face precludes the associates from bringing any federal statutory claims, and it is also deficient. On the theory that reading them together, the first one says you must bring anything related to the employment, related to this agreement in arbitration, and the second one says you can't bring anything but the specified Kemp claims, breach of contract or claims involving willful malicious or fraudulent conduct by AFLAC. Exactly, Your Honor. Now, is this an argument that you made before the district court? No, Your Honor. We did not mention paragraph 10.71 in the district court. What we argued in district court, more generally the issue that arbitration provisions that precludes the prospective litigant from pursuing their statutory claims in arbitral forum invalid, and we made that argument with reference to the cost allocation provision of the arbitration agreement. We did argue that the agreement imposes prohibitive costs on the associates, and that provision, which is provision 10.2, precludes them from bringing their statutory claims in the federal court. Mr. Jaffe, assuming we allowed you to make the argument now since you didn't make it below, and assuming that we agree that that provision is unconscionable, the provision that limits the statutory claims that could be made, isn't that provision severable? There are more provisions in the agreement that achieve the same result. It's not just that provision that is offending to the right to bring statutory claims. There is another provision that is also plainly unconscionable, and it is the cost provision. The cost provision requires associates to pay. But that's a different argument, right? I mean, that's a separate argument. The argument that we're making, Your Honor, is that the whole agreement is tainted with provisions that precludes the associates from fairly pursuing their claims, and it is substantially favorable and unreasonably favorable to the stronger party. So the severance itself will not do much because the whole agreement is tainted with unconscionability. How do we know that the arbitration agreement is cost prohibitive to your clients? We know because the provision that the cost prohibitive feature that we're discussing is first of all, on its face, it absolutely requires the associate to pay full costs and expenses of a party arbitrator. This is not a speculative provision. It's not contingent on the outcome, such as, for example, fee-shifting provisions in Ragon. It's not subject to any mitigation where the arbitration can reallocate the cost at the end. The associates must pay those costs to proceed with arbitration. That's one- I understand that, but how do we know that your clients can't pay it? How do we know that they're not able to pay it? The associates, well, the draft complaint that AFLAC attempts to force us to arbitrate, alleges in great detail that the associates were fraudulently induced by AFLAC to enter into the associates agreement, and they didn't make anything at all that AFLAC represented, and they left AFLAC in financial distress. The associates also filed affidavits and asked the court below to take judicial notice of those affidavits. Stating that they would not be able to afford the cost of arbitration that the agreement imposed on them. So at the very least, the- Those affidavits were filed where? The affidavits were filed on the public record in the parallel action that AFLAC brought against co-plaintiffs in Georgia State. And the district court took judicial notice of them? I didn't see them in the appendix here. I didn't understand that they were part of the record before. We, in our submission to the court, we were limited in the supplemental submission, we were limited to three pages. And in that supplemental submission, we've asked the court to take judicial notice of those affidavits that were filed on public record in the parallel action. We also asked the court to allow us, to grant us leave to file those affidavits in this action. You want us to look at those affidavits for the truth of what is? No, we don't want to look for the truth of what's alleged. What we want the court to take judicial notice of is the fact that the affidavits were filed. And in those affidavits, associates contend that they cannot afford the prohibitive cost of arbitration. At the very least, it raises a factual issue. But don't we have to take them for their truth in order to assess that they say something relevant when they say that the people who swore them are unable to afford the arbitration? You're asking us to take them for their truth, aren't you? I'm asking you to, no, Your Honor, not for the truth of the statement, but the fact that they were made. And the fact that if you take them into consideration, you will see that there are doubts raised about the unconscionability of this agreement. And I believe the rule is, if there are doubts, if there are material facts that are in dispute, then an evidentiary hearing is required, you cannot just dismiss it without any evidentiary hearing. We didn't have any discovery, we didn't have any evidentiary hearing, nothing at all. And we asked for discovery and now supplemental submission as well, but we haven't received it. So these two provisions that we mentioned, that one of them is cost allocation provision, and the other just completely prohibits them from bringing any potential federal statutory claims. Can I ask one other question, please? Is there any contractual provision in the agreements that precludes the AFLAC associates from selling on behalf of other companies? It looked to me like a non-exclusive agreement, this associate's agreement. Am I wrong in reading it that way? No, you're not wrong, Your Honor. On its face, it's not exclusive to AFLAC. But as- So the associates become qualified and then they can sell, they're registered, they qualify in the state, and they can sell on whatever behalf they wish, right? They might do that under the contract, but as we allege in detail in our complaint, that's what not happen, in reality, that's not what happens. Isn't that still inconsistent with the notion that they are in fact employees? No, Your Honor. Well, that is the merits of our claim, and that whether they are employees or not, and that is the- It has to do with how oppressive the terms of the agreement are to your clients, because you're making a non-conscionability argument now. That's a- Yes, correct, Your Honor. But first of all, the exclusivity is not the only factor in deciding whether the associates are employees or independent contractors. And the fact is that, also as we allege at length in the complaint, is that they were not independently licensed insurance professionals when they came to work with AFLAC. That's not how it happened. AFLAC recruited people, including the appellants, who were not independent insurance agents. They were specifically recruited by AFLAC to come to work as AFLAC sales associates. AFLAC bombarded them with fantastical promises of income. And it is in reliance on those promises that they had to go and take licensing classes and pass licensing tests and obtain licenses on the promise of AFLAC that it will pay for all those expenses and they will start making great money. And they went to obtain those licenses with a specific intention of going to work for AFLAC. They didn't intend to just become insurance agents, generally selling insurance in the state of New York. And when they did come, and they were presented for the first time with this agreement, and the signing of this agreement was done in an incredibly rushed and high pressure manner. And the affidavits, again, that we asked the courts to take judicial notice, set them out very clearly. If there was an electronic signature, it's AFLAC manager who controlled the process of the scrolling on the screen. And they were all rushed, for whatever manner they had to execute the contract. It was really rushed. They didn't have much time to review it at all. They didn't have the opportunity to take it with them. There was no window. Do you want to reserve, I see you're over time. Do you want to reserve your two minutes for rebuttal? Or would you like to use part of that time now? I would like if, I will continue answering your questions now then. So you want to use your two minutes? I will use one minute for rebuttal if I may. Okay. Yes, Your Honor. So yes, while the agreement on itself allows them to sell for other companies, the reality is that they were recruited to work as insurance for AFLAC. They studied, they invested time, money, they forgot other opportunities to do that specifically for AFLAC. And with that, with the registration and with the qualifications they obtained, they were then free to sell for any company, isn't that right? They were. They were. Right.  And again, when they started working for AFLAC, the contract allowed them to do it. But in practice, it was literally impossible. And in the complaint, we're alleged that they were almost nearly exclusively selling AFLAC products for various reasons. It took a long time. It's a full-time employment anyway. But the issue is, Your Honor, is that we brought those claims, some of them federal statutory claims in our complaint. AFLAC asked you to force us to arbitrate those claims. We're not looking at the merits at this stage. Because the question of whether the contract is arbitrable or not doesn't go to the merits of the claim. Isn't it that right above where the signature, where your client signed the agreement, says in boldface or in all caps, this contract contains an arbitration agreement which may be enforced by the parties? It does say that, Your Honor.  And as we allege in the instances where AFLAC asked them to scroll and sign, it's AFLAC manager or representative who controls the scrolling. So when you sign something on electronic pad or on electronic screen, you don't necessarily even see those statements. And even if you see those statements, you don't get to the arbitration agreement itself. You're not given the contract to review it at your leisure or consult with an attorney and come back. You've been told in all the instances that the associates alleged on the spot. They've been pulling out of training event, saying that it's just a formality, you should sign it quickly. Or they receive it on the screen, on the electronic pad, where they don't even see it. And it is the AFLAC that controls the process. And the signature doesn't mean necessarily that they either saw the disclaimer or had the opportunity to review the arbitration agreement itself. And furthermore, just because they signed it, if the agreement is unconscionable, and we allege it is patently unconscionable, then they are excused from their attending obligations under even one-sided agreement. And you've reserved some rebuttal time. Thank you. Thank you, Your Honor. Thank you, Mr. Adversary. Good morning. May it please the court, as your honors evidently are well aware, in order to defeat the arbitration provision set forth in their respective agreements with AFLAC. Mr. Baker and Mr. Varela were required to demonstrate that the arbitration provision in the contract was both procedurally and substantively unconscionable, and they failed in both respects. It was their burden with respect to procedural unconscionability to demonstrate that there was both unequal bargaining power and that there was a lack of meaningful choice on their part in signing the agreement. And that's a function of New York law, which must be applied to the analysis. Under New York law, that issue of lack of meaningful choice would require some showing that AFLAC had utilized high pressure tactics or deceptive contract language to obtain the contract that coupled with the alleged unequal bargaining power. As your honors have already noted, these gentlemen are not employees of AFLAC. They were independent sales agents. Can you address paragraph 10.7? I mean, I'm troubled by this limitation of liability because it does seem to prevent associates from raising a host of potential statutory claims, some of which would be employment related, but some of which might not require employment as a precondition. And as your adversary says, even to the extent that something requires employment, it's a matter that's litigated whether someone's an independent contractor or an employee every day in the federal courts, as you know. So why, so what, so am I understanding that paragraph correctly, that it essentially prevents the assertion of a large number of potential federal statutory and state statutory claims? Your honor, I think section 10.71 has to be read together with the entire contract under general contract construction principles, which would include section 10.1, which specifically contemplates that causes of action involving claims under federal, state, local laws, including statutes, would be subject to arbitration under the agreement. So you start with the premise that the contract in the first paragraph of the relevant provision expressly recognizes that those claims would be arbitrable claims. The limitation of liability language also specifically contemplates that any statutory claims or claims of any nature, which involve allegations of willful, malicious, or fraudulent conduct on AFLAC's part, would be arbitrable beyond the scope of breach of contract. And in this case, and that's what's relevant, the draft complaint, the draft class action complaint that the appellants sought to file, which we sought to compel to arbitration, involves statutory claims where the, in every instance, the appellants were asserting willful, malicious, and fraudulent conduct on AFLAC's part. So thereby, under the terms of this contract, it's very clear that any statutory claims they're seeking to assert by way of their draft complaint are within the scope of the arbitration provision and would be arbitrable. They're not barred. So your argument that we don't have to consider whether that provision might be substantively unconscionable because they're not raising any claims that would trigger it. Well, I believe the analysis would begin with that first step. Have they satisfied the first burden to show procedural unconscionability? There are exceptional cases under New York law where you can show substantive unconscionability without procedural unconscionability. I'll concede, Your Honor, that in egregious circumstances, there is that sliding scale. We don't believe that that's present here. But to answer your question directly, I believe that once, if they got over that hurdle, we were talking about substantive unconscionability. In this instance, it would turn on these appellants, their claims, whether their statutory claims could or should be brought. And as one of your honors noted, there is a severability provision in this contract. We do think that the contract term 10.71 is an enforceable provision, which is not unconscionable. But if the arbitrator or the court, it should be an arbitrator's question, but if an arbitrator or the court found that it was an improper provision for any reason, it's severable and would not need to be enforced, and the arbitration provision otherwise could be enforced. But again, I'd like to call out what has already been observed, that any unconscionability argument on the basis of section 10.71 was waived below. It was never raised. Judge Hall never had an opportunity to consider that argument. And no explanation has been offered for that failure to raise that argument before the district court. If Mr. Jaffe is correct, at least in some cases, the way that the agents signed this agreement was in a manner that prevented them from actually reading it, because it was being controlled by an employee of Aflac. So they never saw the provision, never received an opportunity to read the provision. Wouldn't that be procedurally unconscionable? It would require that fact specific case by case analysis for procedural unconscionability, your honor. And respectfully, the allegations we've just heard from appellant's counsel, by and large, are not part of the record in this case. Not only were they not part of the record in the Eastern District of New York, because the affidavits upon which they rely were submitted in a separate action in a district court, a proceeding where neither the appellants nor the appellee were parties. But even if those affidavits had been filed in this court, much of what was described to you is not reflected in those affidavits. The issue would be Mr. Baker and Mr. Varela, and what were the circumstances under which they signed their agreements. If you choose to look at the affidavits which were filed in that Middle District, Georgia case by Mr. Baker and Mr. Varela. They simply events that Mr. Baker and Mr. Varela were anxious to start selling Aflac products. And they chose not to read fully their contracts before they signed. There is no testimony by affidavit even in the Middle District, Georgia case from either gentleman describing a process whereby they were precluded from reading their contracts or even asked for a further opportunity to review them in detail before signing. That's just not part of their affidavit testimony. I do believe the question was posed earlier, whether the court is being asked as a consequence of the request of the district court to take judicial notice. To take notice of the truth of the contents of those affidavits. I believe that's precisely what is being requested here, and that would be improper. It would have been improper on the part of the Eastern District of New York to have taken judicial notice of the truth of those allegations in an affidavit which wasn't before it properly. Well, the district court's consideration of this was pretty truncated as I understand it. And correct me if I'm misunderstanding the record, but there was what, three pages or four pages to address both substantive and procedural unconscionability? Your Honor- Perhaps it was too late by then to put in affidavits. Your Honor, candidly, it was a bit of a situation of the appellant's own making. We had a scheduled hearing, ample opportunity to file briefs, to file declarations, affidavit testimony. They appeared at the hearing and made very clear, if you review the transcript, that unconscionability was only, at most, a secondary argument that they would advance. In fact, in their submissions to the district court, it was only noted in a footnote. It was an exercise of discretion on the Eastern District New York judge's part to allow them the benefit of an additional three pages of briefing. There was no request by them to submit any evidence in addition. And they simply availed themselves of those three pages of briefing, and then allowed a full six months to go by before the district court ruled. During which time, they made no effort to supplement the record. They made no motion to file any additional affidavit or declaration testimony. So, yes, it is true that the affidavits were not of record before the court properly. But that is their responsibility. Coming back to the issue of 10.71, as I've said, that could be severed. The attorney's fees provision, we've noted in our papers, that same argument was advanced in the identical provision in the related but different proceeding in Georgia. The 11th Circuit has now ruled on the unconscionability argument and found that the contract was not unconscionable. And like the 10 point- The 11th Circuit didn't specifically address the 10.7.1 argument. That's correct. The first time that argument has been advanced by Mr. Jaffe is in this court. Not in the district court, in either of the cases, nor before the 11th Circuit. Thank you, your honors. Thank you, your honors. Ms. Cassily stated that the federal statutory claims that the associates brought based on willful, malicious, and fraudulent conduct, and therefore, they are within the, they are not precluded. That is emphatically not true. The federal statutory claims that we bring in the draft complaint are claims for ERISA violation, and ERISA has a private right of action recognized and granted by the Congress, and it does not require the showing of fraud or malice or willfulness. And so the federal statutory claims that we're alleging are not at all based on fraud, and therefore, they would be precluded by 10.7.1. Does that specifically exclude ERISA? No, no, the provision 10.71 limits the claims that could be brought in arbitration to claims of breach of contract. And those claims that require the showing of willfulness, maliciousness, malice, or fraud. And the claims for ERISA benefits do not require any of that. So our claims that we brought for federal statutory claims, we will not be able to arbitrate. So when the district court grants the motion, AFLAC's motion to compel arbitration, and let's say we go on arbitration, we won't be able to bring those claims there. Because they- Excuse me, but won't the arbitrator have the opportunity to rule on the scope of the arbitration provision? And the kinds of claims that the arbitrator is willing to hear? No, because- Why not? But the agreement itself prohibits him from doing that, because- As we've been discussing, there's a conflict in the language between what arbitration is contemplated. 10.1 contemplates statutory causes of action. 10.71 seems to limit them to breach of contract unless willful, malicious, or fraudulent activity is alleged. And I'm asking why would the arbitrator be in a position to determine the proper scope of her authority? But this is not what 10.1 says, that the associates must bring all the claims into arbitration, and those claims include all the federal claims. And then another provision says that associates cannot bring any of the claims other than breach of contract or tort claims with a specific intent. So the arbitrator will have no power to review those claims, because they're precluded by 10.71. And if they do, then the award will be subject to invalidation. And there were cases like that, Your Honor, in the West Side case Palladino in the 11th Circuit, where the court looked exactly at the same type of provision and says, on the one hand, you require all federal claims to be brought in arbitration. On the other hand, you deny the plaintiff remedies under those provisions. And that was unconscionable. And we also said, I believe, the Third Circuit decision on the same point. That if the arbitration provision on the one hand requires you to bring federal statutory claims, and on the other hand precludes you from obtaining any remedy in arbitration, then those provisions work hand in hand, hand in glove, to deny you the opportunity to pursue the right to federal statutory claims. This court in Ragon stated that the provision that would actually preclude the plaintiff from pursuing its statutory claims is, quote, plainly unconscionable. And if the arbitration agreement- Your adversary pointed out before the district court, you relied principally on the confidentiality provision in the arbitration agreement, and raised substantive and procedural unconscionability in a footnote, and didn't raise this argument at all. We did not, Your Honor, but during oral argument, we did raise the point of unconscionability, and we developed it a bit more, and we specifically requested the judge for permission for subsequent briefing on that issue. We were given that permission, though very limited in both time and space. We did what we could. I wish we had more opportunities and time to develop it better. But to the point that it was all of appellant's own making, as Ms. Cassily stated, I respectfully disagree. Because if you look at the procedural history of this case, we didn't file the complaint. We were not, the complaint existed in a draft form. We provided them to AFLAC in the middle of settlement negotiations. And it was AFLAC who precipitously and swiftly filed lawsuits against my clients in two jurisdictions, given us very, very little time to respond, and very tight scheduling and filing deadlines were presented to us. I wish I could have done more at that point. I did all I could, and we've managed to raise those issues in the district court below, at least in this circuit, in the eastern district. And we argued that, and another thing to the point of the procedural unconscionability. Yes, if you do take a look at the affidavits filed in those actions, appellant Baker specifically states that he was told by a manager of AFLAC, he was the name of the manager, to take the pen to sign on the screen while the manager itself scrolls down to the right place, but I'll show you. We have the affidavits. Right. And we'll take a close look at them. And this- Thank you for your argument. Thank you. Thank you, your honors. And well argued on both sides. Thank you.